UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

In the Matter of the Application of C.B. on behalf of Z.G.
her minor child,

                                   Plaintiff,        07 CV 3419 (AKH) (THK)

                 -against-

DEPARTMENT OF EDUCATION OF THE CITY OF
NEW YORK,

                                   Defendant.

------------------------------------------------------------------------ x

## NEW YORK CITY DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff, the parent of a student with a disability, brings this action seeking to appeal an administrative decision by the New York State Department of Education Office of State Review.    In that decision, the State Review Officer ("SRO") denied plaintiff reimbursement for the cost of tuition at the Dalton School ("Dalton"), a private school at which plaintiff unilaterally placed her daughter ("the Student") for the 2005-2006 school year. Defendant New York City Department of Education ("DOE") submits this memorandum of law in support of its motion for summary judgment.

The essential issue before the Court is whether plaintiff sustained her burden under *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985), *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), and their progeny and demonstrated that the decision of the DOE to not classify the Student as a child with a disability was incorrect, that the general

education program recommended by the DOE was inappropriate, and that the unilateral placement chosen by plaintiff for the Student was appropriate. The Impartial Hearing Officer ("IHO") who presided over the underlying hearing found that plaintiff met her burden, and granted plaintiff tuition reimbursement, but the SRO reversed that decision. The SRO found that the DOE's decision not to classify the Student as a child with a disability was appropriate, and thus, the Student was not entitled to any special education services, nor to reimbursement for tuition at Dalton, the unilateral placement chosen by plaintiff. Having made that determination, that SRO did not reach the question of whether Dalton was appropriate for the Student.

As discussed more fully below, this Court should affirm the SRO's decision and award summary judgment to DOE. The SRO correctly held that plaintiff has failed to carry her burden of establishing that the DOE erred in refusing to classify the Student as a child with a disability. Further, plaintiff also failed to establish that Dalton was an appropriate placement for the Student. Finally, the equities do not favor plaintiff in this matter. Accordingly, upon any of these reasons, defendant is entitled to judgment as a matter of law, and its motion should be granted.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Rule 56.1 Statement of Material Facts, dated October 5, 2007 ("Defendant's 56.1 Statement"), for a statement of those material facts which are not in dispute, and on which this motion is based.

## ARGUMENT

### Standard of Review

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, to promote the education of children with disabilities. The IDEA defines a child with a disability as a child "with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this title [20 USCS §§ 1400 et seq.] as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities." 20 U.S.C. § 1401(3)(A)(i). The New York Education Law defines a child or student with a disability more generally as "a person under the age of twenty-one who is entitled to attend public schools pursuant to section thirty-two hundred two of this chapter and who, because of mental, physical or emotional reasons can only receive appropriate educational opportunities from a program of special education," N.Y. Educ. Law § 4401(1).

Students who meet these criteria must receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), comprising special education and related services provided at public expense, which meet the standards of the State educational agency, and that are provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. § 1401(9). Students who do not meet these criteria are not entitled to special education and related services under the IDEA. *See N.C. v. Bedford Cent. Sch. Dist.*, 473 F. Supp.2d 532, 546-47 (S.D.N.Y. 2007) (finding that school was not obligated to offer special education services to student who did not meet the criteria for classification under the IDEA). By definition, a school district's decision not to provide such services to its non-disabled students cannot be considered a denial of FAPE. *See id.*

New York defines special education as "specially designed individualized or group instruction or special services or programs… to meet the unique needs of students with disabilities," 8 NYCRR § 200.1(ww), and "related services" as developmental, corrective, and other supportive services as are required to assist a student with a disability…" 8 NYCRR § 200.1(qq). State boards of education are required to prepare an IEP for each student with a disabling condition, setting forth the goals and objectives for the student, and the recommended educational program and related services to attain those goals and objectives. 20 U.S.C. § 1414(d). Both federal and State special education laws require that a child with a disability be educated in the least restrictive environment, that is, with nondisabled peers to the extent feasible and appropriate. 20 U.S.C. § 1412(a)(5); N.Y. Educ. Law § 4402. Special education and related services should be "tailored to meet the unique needs of the child with a disability and be reasonably calculated to enable the child to receive educational benefits." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998); *see also Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982). The amount, or level, of educational benefits that must be provided is not specified in the IDEA. *Walczak*, 142 F.3d at 130. The Supreme Court has held that programs need not maximize the potential of a child with a disability to provide the child with FAPE. *Rowley*, 458 U.S. at 197, n.21; *Walczak*, 142 F.3d at 130.

In New York, the responsibility for developing students' IEPs has been granted to the local Committee on Special Education ("CSE"). 20 U.S.C. §§ 1401(8), 1414(b)(2),(d); 8 NYCRR § 200.4(b). If the recommendations in the IEP prepared by a CSE do not provide the student with FAPE, a parent may select a private school program for the student and seek to obtain tuition reimbursement from the local board of education. 20 U.S.C. § 1400(d)(1)(A). A

board of education may be required to pay for the educational program selected by the parent only if the educational program recommended by the board of education was inadequate or inappropriate, the program selected by the parent was appropriate, and the equities support the parent's claim; these three factors comprise the "Burlington/Carter" test, or criteria. *Burlington*, 471 U.S. 359; *Carter*, 510 U.S. 7. In a case where a department of education has not provided an appropriate educational program, a parent may unilaterally place a disabled student in a private program and obtain reimbursement of tuition if the private placement is appropriate, such that the private program meets the child's special education needs. *See Carter*, 510 U.S. at 12-13; *Walczak*, 142 F.3d at 129. However, parents who unilaterally place their children in private schools do so at their own financial risk. *Burlington*, 471 U.S. at 373-74.

A parent seeking tuition reimbursement may request an impartial due process hearing before an IHO. 20 U.S.C. § 1415(f)(1)(A); New York Education Law § 4404(1). The IHO's decision may be appealed to the SRO, whose decision is final in the administrative review process. 20 U.S.C. § 1415(g)(1); New York Education Law § 4404(2). After the completion of this administrative review process, the aggrieved party may appeal the decision of the SRO in state or federal district court. 20 U.S.C. § 1415(i)(2)(A). In the appeal, both parties may move for summary judgment, even if there are disputed issues of material fact. *Viola v. Arlington Central Sch. Dist.*, 414 F. Supp.2d 366, 377 (S.D.N.Y. 2006). A parent seeking tuition reimbursement for a unilateral placement has the burden of proof, as the burden falls on the party seeking the relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). The IDEA broadly authorizes courts to grant relief deemed appropriate. 20 U.S.C. § 1415 (e)(2); *see Muller v. Comm. on Special Educ.*, 145 F. 3d 95, 104 (2d Cir. 1998).

Two issues are relevant to federal review of an IEP: whether the development of the educational plan for the student conformed to procedural requirements, and whether the educational plan was reasonably calculated to confer educational benefit on the student. *Walczak*, 142 F.3d at 129 (*citing Rowley*, 458 U.S. at 206-07). Review of a parent's unilateral placement similarly focuses on whether the placement's program was reasonably calculated to confer educational benefits on the student. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006) (*citing Rowley*, 457 U.S. at 207; *Muller*, 145 F.3d at 105). As no one factor is dispositive in evaluating a unilateral placement, courts make the determination based on the totality of the circumstances. *Frank G.*, 459 F.3d at 364 (*citing Rowley*, 457 U.S. at 207; *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th Cir. 2001)). Parents making unilateral placements must also conform to certain procedural requirements, but any failure to do so is taken into account when weighing equitable considerations. *See M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000).

Federal courts are required to decide IDEA actions on the basis of the preponderance of evidence developed at the administrative proceedings, and may consider additional evidence presented by the parties. 20 U.S.C. §1415(i)(2)(C); *M.S. v Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000), *cert. denied,* 532 U.S. 942 (2001). While IDEA administrative determinations are subject to "independent" judicial review, the Supreme Court and the Second Circuit have emphasized that they "have interpreted the IDEA as strictly limiting judicial review of state administrative proceedings." *See Viola*, 414 F. Supp.2d at 377-78 (*citing Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380-81 (2d Cir. 2003); *Rowley*, 458 U.S. at 204-208; *Walczak*, 42 F.3d at 129). A district court review of an SRO decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of

the school authorities which they review." *Rowley*, 458 U.S. 176, 206; *accord Walczak*, 42 F.3d at 129. Federal courts "are expected to give 'due weight' to state administrative proceedings," *M.S.*, 231 F.3d at 102. The federal courts should defer to the expertise of state and local educational agencies and they are required to defer to the findings made at the state administrative proceedings, including the final decision of the state authorities. *Muller*, 145 F.3d at 101 (internal citations omitted).

## POINT I

### THE DOE'S DETERMINATION TO NOT CLASSIFY THE STUDENT AS A STUDENT WITH A DISABILITY WAS PROPER AND THE GENERAL EDUCATION PROGRAM IT OFFERED WAS APPROPRIATE

A parent seeking reimbursement for a unilateral private placement must demonstrate, in the first instance, that the placement offered by the school district is inappropriate. Plaintiff here has not, and cannot, meet that burden. As the SRO correctly concluded, the DOE followed the applicable state and federal procedures in evaluating the Student, and properly concluded that the Student did not meet the criteria for any of the classifications that would entitle her to special education services. Thus, the DOE's proffered general education program was the only appropriate program under the IDEA that the DOE could recommend, and this Court should affirm the SRO's decision denying tuition reimbursement.

**A.    The IEP formulated for the Student conformed with the procedural requirements of both federal and state law.**

The IDEA requires school districts to develop an IEP for each student with a disability, specifying the procedures and requirements which must be followed. 20 U.S.C. §

1414.  In accordance with the demands of the IDEA, New York State regulations specify that that a CSE shall evaluate students who may have disabilities.  State regulations specify that the committee shall include a parent, a regular education teacher, a special education teacher, a parent member, the school psychologist, a representative of the school district, and a person capable of evaluating the student's test results (the last two roles may be fulfilled by the school psychologist).  *See* N.Y. Educ. Law § 4402(1)(b)(1); 8 NYCRR § 200.3.  The parents must be able to fully participate in the formulation of the IEP.  *See Walczak*, 142 F.3d at 129.    Four factors must be assessed in developing the IEP:  "(1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs."  *Id*. at 123 (*citing* 8 NYCRR 200.1(kk)(2)(i));  *see also* 8 NYCRR 200.4(b).  Any failure to comply with these requirements does not necessarily amount to a denial of FAPE, only procedural inadequacies that result in a "loss of educational opportunities or seriously infringe upon on a parent's participation in the creation or formulation of an IEP constitute a denial of a FAPE."  *Matrejek v. Brewster Cent. Sch. Dist.*, 471 F.Supp.2d 415, 419 (S.D.N.Y. 2007) (*citing Knable*, 238 F.3d at 766;  *Grim*, 346 F.3d at 283).

In the present case, as both the IHO and the SRO recognized, all of the procedural requirements were met.  The CSE was duly comprised of all the required participants for the Student's IEP meeting, and the meeting was held within 60 days of receiving parental consent, as is also required.  Defendant's Local Rule 56.1 Statement of Undisputed Facts, dated October 5, 2007 ("Rule 56.1 Statement") at ¶¶ 13, 19, 22;  *see also* 8 NYCRR § 200.4(b)(7).  All of the participants, including the parents, participated fully in the entire meeting.  *Id*. at ¶ 23.  Finally, all four of the critical factors set forth by the Second Circuit in *Walczak* were properly considered by the CSE.  *Walczak*, 142 F.3d at 123.

Once plaintiff gave her consent to evaluate the Student, DOE conducted a psycho-educational evaluation, which included the administration of the Stanford Binet Intelligence Scale and the Wechsler Individual Achievement Test.  Rule 56.1 Statement at ¶¶ 13, 14.  DOE also observed the Student at Dalton.  *Id*. at ¶ 21.  Plaintiff had independent psychological and neuropsychological testing done, which included administration of the Wechsler Intelligence Scale for Children.  *Id*. at ¶ 20.  The CSE considered all of these reports, as well as grade reports, and standardized test results, thus thoroughly considering the Student's academic achievement and learning characteristics.  *Id*. at ¶¶ 20, 21.

DOE also conducted a Social History interview and the Student's social characteristics were explored in the neurological and psychological testing report that was considered by the CSE.  Rule 56.1 Statement at ¶ 14, 20.  The Student was also administered a Behavioral Assessment System for Children 2 as part of the psycho-educational evaluation conducted by the DOE, and the independent testing plaintiff procured included an evaluation of the Student's emotional functioning.  *Id*.  The CSE participants discussed the Student's social and behavioral needs at length, and the seven-page IEP formulated by the CSE for the Student discussed the Student's social and emotional performance in detail.  *See id*. at ¶ 24, 30.  The IEP also noted that the Student has no physical limitations or physical management needs that would have to be accounted for in her education program.  *Id.* at 30.  By considering all of these materials, the CSE properly assessed all of the required factors in formulating the Student's IEP.

The CSE was properly constituted, the participants were all able to contribute to the formulation of the Student's IEP, and all the necessary factors were considered by the panel. For these reasons, the procedural requirements were met in evaluating the Student.

**B.  The Student did not meet the criteria for any of the qualifying "disabilities" that would make her eligible for special education and related services and, thus, a general education program was the only program the CSE could appropriately recommend.**

At the January 23, 2006 meeting, the CSE properly concluded that the Student did not meet the criteria for any of the specific disabilities covered in the IDEA.  There are three classification that could potentially apply to the Student – learning disabled, emotionally disturbed, and other health impaired – but after careful consideration, the CSE found the Student could not be appropriately categorized as any of the three.  Rule 56.1 Statement at ¶ 25.  Based on the evidence before it, this was the correct determination and the only conclusion that the CSE could reach.

The Student could not be appropriately categorized as learning disabled.  New York defines "learning disability" as:

> [A] disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, which manifests itself in an imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, as determined in accordance with section 200.4 (c)(6) of this Part. The term includes such conditions as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia and developmental aphasia. The term does not include learning problems that are primarily the result of visual, hearing or motor disabilities, of mental retardation, of emotional disturbance, or of environmental, cultural or economic disadvantage.

8 NYCRR § 200.1(zz)(6).  For a psychological disorder to qualify as a "learning disability," there must a discrepancy of at least 50% between the student's intellectual abilities and achievement test scores.  *See* Rule 56.1 Statement at ¶ 26;  *see also* Exhibit ("Exh.") SRO 3 at 236.  The CSE analyzed the IQ scores from both the testing conducted by the DOE and the privately obtained testing and both showed that the Student's discrepancy was far less than 50%,

- 10 -

well below the criteria for a learning disability. *See* Rule 56.1 Statement at ¶ 26. Further, the Student performed exceptionally on the verbal portion of the Stanford Binet test, on the reading and written expression portions of the Wechsler Individual Achievement Test, and on the verbal comprehension portion of the Wechsler Intelligence Scale for Children test. Exh. SRO 3 at 211-212, 215-216, 226. These results demonstrate that the Student has little or no difficulty in understanding or using language, spoken or written, as the statutory definition of "learning disability" requires. *See* 8 NYCRR 200.1(zz)(6). Thus, the CSE properly concluded, based on the evidence before it, that the Student could not be classified as having a "learning disability."

The Student also showed no signs of an emotional disturbance, as the term is defined by statute, in the behavioral testing reviewed by the CSE, or in any other part of the record. Rule 56.1 Statement at ¶¶ 16, 27. New York defines "emotional disturbance" as:

> [A] condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a student's educational performance:
>
> (i) an inability to learn that cannot be explained by intellectual, sensory, or health factors;
>
> (ii) an inability to build or maintain satisfactory interpersonal relationships with peers and teachers;
>
> (iii) inappropriate types of behavior or feelings under normal circumstances;
>
> (iv) a generally pervasive mood of unhappiness or depression; or
>
> (v) a tendency to develop physical symptoms or fears associated with personal or school problems. The term includes schizophrenia. The term does not apply to students who are socially maladjusted, unless it is determined that they have an emotional disturbance.

8 NYCRR § 200.1(zz)(4). The Student did not exhibit to a meaningful degree any of the five possible characteristics of an emotional disturbance. First, her academic record and her achievement test scores demonstrate that she does not suffer from an "inability to learn." *See* Rule 56.1 Statement at ¶¶ 4, 5, 9, 15, 20; 8 NYCRR § 200.1(zz)(4)(i). Second, the Student is able to maintain appropriate relationships with her peers and with teachers. *See* 8 NYCRR § 200.1(zz)(4)(ii). Marilyn Mash, the Special Education teacher who observed the Student and participated in the CSE review, testified that the Student interacted well with her teachers and with other students, and the Student's performance on the Behavioral Assessment System indicated she has a good attitude regarding teachers and school. Exh. SRO 3 at 218, 321, 327, 330. Third, the Student did not report or demonstrate any inappropriate behavior or feelings during the evaluative testing conducted or when she was observed at Dalton. Exh. 6 at 5-6; Exh. 7 at 1-3; Exh. 8 at 3-4, 8-9; Exh. SRO 3 at 218; *see also* 8 NYCRR § 200.1(zz)(4)(iii). Fourth, the Student also did not report or demonstrate signs of depression or unhappiness during the aforementioned testing and observations. Exh. 6 at 5-6; Exh. 7 at 1-3; Exh. 8 at 3-4, 8-9; Exh. SRO 3 at 218; *see also* 8 NYCRR § 200.1(zz)(4)(iv).

Fifth, while plaintiff expressed concern about the Student's anxiety and this was considered by the CSE, both the DOE and private testing indicated that the Student had coping skills and support systems in place to deal with anxiety and other concerns. *See* Exh. 6 at 7; Exh. 8 at 9; Exh. SRO 3 at 239. Moreover, the Student had consistently functioned and performed well in school. *See* Rule 56.1 Statement at ¶¶ 4, 5, 9, 15, 20. Therefore, even if the Student had a "tendency to develop physical symptoms or fears associated with personal or school problems," this tendency was not apparent for a "long period of time" or otherwise as the statutory definition of emotional disturbance requires. *See* 8 NYCRR § 200.1(zz)(4)(v). Further,

the testing reviewed by the CSE indicated that the Student's bipolar disorder was not adversely affecting her educational performance, nor was her anxiety or any other condition. Rule 56.1 Statement at ¶¶ 16, 27. To the contrary, she had excelled at every level, both in the public school setting and in private school. *Id*. at ¶¶ 3, 4, 5, 9. Therefore, as set forth under New York law, the Student did not meet the criteria for any of the characteristics of emotional disturbance.

Finally, the Student also could not properly be classified as "other health impaired." New York defines "other health impaired" as:

> [H]aving limited strength, vitality or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that is due to chronic or acute health problems, including but not limited to a heart condition, tuberculosis, rheumatic fever, nephritis, asthma, sickle cell anemia, hemophilia, epilepsy, lead poisoning, leukemia, diabetes, attention deficit disorder or attention deficit hyperactivity disorder or tourette syndrome, which adversely affects a student's educational performance.

8 NYCRR § 200.1(zz)(10). As with "emotional disturbance," the CSE found the Student could not be classified as "other health impaired" because such a classification requires a finding that the Student have a medical condition that adversely affected her educational performance. Rule 56.1 Statement at ¶ 28. As noted above, the Student has a strong and impressive academic record, and there is no indication that her educational performance has been adversely affected or that she is not alert with respect to her educational environment. *See id*. at ¶¶ 4, 5, 9; 8 NYCRR § 200.1(zz)(10). Further, the Student demonstrated acute alertness to the educational environment by participating effectively in class, and reports indicate the Student did so regularly. *See* Exh. 7 at 1-3; Exh. SRO 3 at 327. Thus, following the statutory definition, the CSE properly concluded that the Student also did not meet the criteria for, and could not be

- 13 -

properly classified as, "other health impaired" under the statutory definition. *Id*. at ¶ 28;  8 NYCRR § 200.1(zz)(10).

Despite these facts, the IHO concluded that the Student should be classified as "other health impaired."   Rule 56.1 Statement at ¶ 37.   Although the IHO observed that no empirical evidence established that the Student's bipolar disorder affected her educational performance, he was swayed by testimony from the Student's teacher at Dalton that the disorder did affect the Student adversely because the Student occasionally displayed symptoms of her disorder. *Id*. at ¶ 38.   Based on this testimony, the IHO concluded that the Student's grades and test scores might have been higher still, if not for her disorder. *Id*. at ¶ 39.

However, as the SRO noted, the IHO's conclusions were speculative and not based on the evidence in the record.   Rule 56.1 at ¶ 49.   The SRO found the record demonstrated a strong academic performance by the Student with no apparent adverse affects. *Id*. at ¶ 49, 50. The SRO held that because record did not demonstrate that the Student's educational performance was adversely affected, the CSE was correct when it did not classify the Student as child with a disability. *Id*. at ¶ 51;  *see also N.C.*, 473 F. Supp.2d at 546 (holding decision to not classify student as child with a disability was proper in part because student's academic achievements demonstrated that psychological difficulties did not adversely affect the student's educational performance).

The SRO reached the correct conclusion and was right to reverse the IHO.   The record demonstrates that the Student, at most, suffers from age appropriate anxiety and emotional concerns, but her educational performance has not been negatively affected by these concerns. *See* Rule 56.1 Statement at ¶¶ 4, 5, 9, 16, 27, 28.   To the contrary, the Student has performed exceptionally at school for all the school years documented in the record. *See id*.   For

this reason, she cannot be properly classified as "other health impaired," and she cannot be properly classified as having any other disability recognized by the IDEA. *Id*. at ¶¶ 24-28. Therefore, the CSE properly classified her as non-handicapped.

As the Student was properly classified as not having any disability, she is not entitled to special education or related services, nor does the record indicate that she requires such services. Thus, the only appropriate recommendation the CSE could have made was for placement in a general education program. For the foregoing reasons, this Court should uphold the decision of the State Review Office and grant defendant's motion in its entirety.

## POINT II

**THE UNILATERAL PLACEMENT SELECTED BY PLAINTIFF IS NOT AN APPROPRIATE PLACEMENT UNDER THE IDEA**

Even if this Court were to find that the DOE's classification of the Student as non-handicapped was in error and constituted a denial of FAPE, plaintiff still must demonstrate that Dalton was appropriate to meet the special education needs of the Student to be entitled to tuition reimbursement. *Shaffer*, 546 U.S. at 62; *M.S.*, 231 F.3d at 104. Plaintiff here cannot do so, and accordingly, DOE's motion should be granted.

In order to prevail, plaintiff must show that Dalton provided an educational program and the necessary support services that met the Student's special education needs. *E.g., Frank G.*, 459 F.3d at 364-65 (citing *Rowley*, 458 U.S. at 188-89; *M.S.*, 231 F.3d at 105). As noted above, New York defines special education as "specially designed individualized or group instruction or special services or programs... to meet the unique needs of students with disabilities," 8 NYCRR § 200.1(ww), and "related services" as developmental, corrective, and

other supportive services as are required to assist a student with a disability…"  8 NYCRR § 200.1(qq).  However, Dalton is not providing special education or related services to the Student, and thus it cannot be an appropriate placement for her.  Rule 56.1 Statement at ¶ 10;  *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113-14 (2d. Cir. 2007) (finding unilateral placement was not appropriate because it did not provide necessary special education services to the student).

Dalton is a general education school and the Student was in an accelerated, general education program.  Rule 56.1 Statement at ¶ 7, 9.  Indeed, the services, or "accommodations," that the Student received while at Dalton are all readily available in a general education, public school setting.  *Id*. at ¶ 11.  In the proceedings below, plaintiff cited to Dalton's making the school nurse and psychologist available to the Student, the prompting and support provided by the Student's teacher, and the services of a learning specialist who observed the Student's classroom three times per week.  *Id*. at ¶ 10.  However, none of these constitute special education services.  The school nurse did not provide any particular service to the Student, but made her office available to the Student as a place to relax.  *Id*.  The school psychologist was available to speak with the Student, but had no regular sessions with her and the record does not show that the Student availed herself of this opportunity with any frequency.  *See id*.  The prompting and support offered by the Student's teacher are also not examples of special education services designed to meet the Student's needs – they are merely examples of good and considerate teaching provided by a teacher sensitive to the Student's bipolar disorder.  *See id*.  The learning specialist who observes the Student also does not provide the Student with any particular services, but simply offers advice to the Student's teacher in how to approach teaching the Student, and other children in the class.  *See id*.  These also are not special education

services, as defined by the State. Further, as mentioned above, all of these services would be available to the Student in a public school, general education program. *Id.* at ¶ 11. As Dalton does not provide the Student with any special education services, it cannot be considered an appropriate placement for her, even if she were found to be a student in need of special education.

In his decision, the IHO held that, in addition to the accommodations the Student receives at Dalton, the progress the Student has made while at Dalton supported his conclusion that Dalton was an appropriate placement. Rule 56.1 Statement at ¶ 42. However, evidence of the Student's progress after the unilateral placement is made is not the only basis on which to decide whether Dalton was an appropriate placement. *See, e.g., Viola*, 414 F. Supp.2d at 382 (stating that any progress made after unilateral placement is made should not be considered).

Of particular relevance to the case at bar, the Second Circuit stated in *Gagliardo*:

> We finally add a word about the position a district court finds itself in where, as here, it is called upon to review a case in which parents have enrolled their disabled child in a private school, believing it to be the best thing for the child, and can point to their child's record of success at the school they chose. It is understandable that a district court would be receptive to parents under these circumstances; a child's progress is relevant to the court's review. But such progress does not itself demonstrate that a private placement was appropriate….Indeed, even where there is evidence of success, courts should not disturb a state's denial of IDEA reimbursement where, as here, the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not. A unilateral placement is only appropriate if it provides education instruction specifically designed to meet the unique needs of a handicapped child.

*Gagliardo*, 489 F.3d at 115 (internal citations omitted).  This reasoning applies directly to the errors made by the IHO, who gave too much credit to both the Student's progress and to the Dalton program in finding the placement appropriate.  *See* Rule 56.1 Statement at ¶ 42.  Further, any progress the Student has enjoyed at Dalton is no more than the progress she had been making at P.S. 166.  *See* Rule 56.1 Statement at  ¶¶ 4, 5, 9.  There is no evidence of any notable academic improvement after the Student was removed from P.S. 166 and placed at Dalton, making any progress made by the Student at Dalton even less significant.  *See N.C.*, 473 F. Supp.2d at 543 (finding lack of evidence of "dramatic academic improvement" at unilateral placement mitigating against an award of tuition reimbursement);  *see also Viola*, 414 F. Supp.2d at 382 (noting that progress made at unilateral placement does not prove similar progress would not have been made in public school setting).

It should also be noted that much of what plaintiff cited below as establishing the appropriateness of Dalton could simply be considered educationally desirable for any student.  It is reasonable to infer, as the Second Circuit did, that all parents want smaller classes and attentive staff in their children's schools.  *See Gagliardo*, 489 F.3d at 115.  However, this Court should not allow plaintiff to conflate those services which are "desirable" with those that are required.  The IDEA and its State counterparts insist that school districts provide special education students with services that meet their needs, but they do not require schools to provide ideal services.  *See* 8 NYCRR § 200.1(ww);  *Walczak*, 142 F.3d at 130.  The Supreme Court has held that the IDEA does not require school districts to maximize students' potential.  *Rowley*, 458 U.S. at 197, n.21;  *Walczak*, 142 F.3d at 130.  Thus, while the services the Student receives at Dalton may be desirable, this is not the IDEA's mandate.  The IDEA was not intended to provide general education students with a means to receive scholarships to private schools.  If

plaintiff is to be reimbursed for the Dalton tuition, she must establish that Dalton's services were special education services that were necessary to provide the Student with a free and appropriate public education.  *See Carter*, 510 U.S. at 12-13;  *Walczak*, 142 F.3d at 122, 129.  Upon the record before this Court, she cannot do so.  For these reasons, her claim for tuition reimbursement should be denied, and the DOE's motion should be granted.

**POINT III**

**EQUITABLE CONSIDERATIONS WEIGH IN FAVOR OF DENYING PLAINTIFF TUITION REIMBURSEMENT**

Finally, in order for plaintiff to obtain reimbursement for the Dalton tuition, she must not only demonstrate that the school district's general education program was inappropriate and the unilateral placement she chose was appropriate for the Student's needs; the third prong of the *Burlington/Carter* test requires that the equities must be resolved in the parent's favor. *See Burlington*, 471 U.S. at 370-71;  *Carmel Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402, 417-18 (S.D.N.Y. 2005).  Equitable considerations are relevant to the relief fashioned under the IDEA, and the Courts should consider all relevant factors, including the reasonableness of the parties' position.  *See Wolfe v. Taconic Hills Central School Dist.*, 167 F. Supp.2d 530, 533 (N.D.N.Y. 2001).

In this case, even if the Court should find that the placement offered by DOE was inappropriate and the unilateral placement selected by the parent was appropriate, a consideration of the equitable factors here weighs heavily in favor of denying reimbursement. The record indicates that plaintiff did not intend to accept any public school placement, but sought an evaluation from the CSE solely to support her claim for reimbursement of the Student's tuition at Dalton.

By the time plaintiff contacted the DOE, she had already retained an attorney. Rule 56.1 Statement at ¶ 17.  By that time, the Student had been enrolled at Dalton for more than two school years and plaintiff did not want to uproot her from there.  *See id*. at ¶ 12.  Plaintiff sought an impartial hearing before the CSE was able to meet, in doing so seeking reimbursement before the CSE even had an opportunity to make a recommendation.  *See id*. at ¶¶ 13, 20. Finally, after the CSE meeting, plaintiff made no effort to have the CSE revise its recommendation, but instead renewed her request for an impartial hearing with the intention of obtaining tuition reimbursement.  *Id*. at ¶ 31.

All of these facts indicate that plaintiff contacted the CSE not to find a public school program for the Student, but to obtain reimbursement for Dalton.  This suggests plaintiff never intended to place the Student back in the public school system.  Therefore, equitable considerations do not support plaintiff's claim, and weigh in favor of denying tuition reimbursement.  *See Carmel*, 373 F. Supp. 2d at 418 (finding evidence that parents did not intend to send student to public school supported conclusion that parents were not entitled to tuition reimbursement).

Accordingly, all three of the *Burlington/Carter* factors should be decided in favor of DOE, and DOE's motion for summary judgment should be granted.

## Conclusion

Based on the foregoing, defendant New York City Department of Education respectfully requests that its motion for summary judgment be granted, and that the Court grant DOE such other and further relief as the Court deems just and proper.

Dated:      October 5, 2007
             New York, New York

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the
                         City of New York
                        Attorney for Defendant
                        100 Church Street, Room 2-179
                        New York, New York  10007
                        212-788-0889

                      By:           /s
                            Andrew J. Rauchberg (AR 2179)
                            Assistant Corporation Counsel

To:     Neal H. Rosenberg, Esq.
         Law Offices of Neal Howard Rosenberg
         Attorney for Plaintiff
         9 Murray Street, Suite 4 West
         New York, New York  11235
         212-732-9450
         (via ECF)