UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

| | |
|---|---|
| In the Matter of the Application of C.B. on behalf of Z.G. her minor child,<br><br>                                        Plaintiff,<br><br>        -against-<br><br>DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK,<br><br>                                        Defendant. | **DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**<br><br>07 CV 3419 (AKH) (THK) |

------------------------------------------------------------------------ x

Pursuant to Rule 56.1 of the Local Rules of this Court, defendant submits that the following facts are undisputed:

      1.     Plaintiff C.B. is the parent of Z.G. ("the Student"). *See* Exhibit 11, submitted to this Court by defendant on August 17, 2007 ("Exh.") at 1.[1]

      2.     The Student attended public school at P.S. 166 from kindergarten through the third grade. Exh. SRO 2 at 80; *see also* Exh. 16 at 1; Exh. 17 at 1.

      3.     While at P.S. 166, the Student was placed in a program for gifted students. Exh. SRO 2 at 80, 87.

---

[1] Citations given here to page numbers correspond to those on the original documents and do not account for the "exhibit tabs" which defendant included with the computer files that were submitted to this Court. Citations will thereby be consistent with those made by the Impartial Hearing Officer, the State Review Officer, and the parties in their submissions to the State Review Office. Thus, defendant here refers to Exh. 11 at 1, which corresponds with the second page of the pdf file that was submitted to the Court.

4. The Student consistently received high marks at P.S. 166 and her report cards for both the second and third grade include praise from her teachers for both her academic work and her social development. Exh. 16 at 1; Exh. 17 at 1; Exh. SRO 3 at 220-21.[2]

5. The Student also performed well on the standardized tests administered at the end of third grade, far exceeding citywide averages in the English Language Arts test and meeting grade level standards in mathematics. Exh. 15 at 1.

6. During the 2002-2003 school year, the Student's third grade year, the Student was diagnosed with bipolar disorder. Exh. 9 at 1.

7. At the end of the 2002-2003 school year, plaintiff removed the Student from public school and unilaterally placed her at the Dalton School ("Dalton"), an elite, private, general education school. *See* Exh. SRO 2 at 88-91, 159; Exh. SRO 3 at 348, 352; Exh. SRO 7 at 2.

8. Plaintiff testified that she placed the Student at Dalton at the recommendation of the Student's psychiatrist, and because the Student had become "dysfunctional in the home." Exh. SRO 2 at 107-08.

9. At Dalton, the Student was placed into an accelerated program where she also performed well. Her Fall 2005 grade report includes many positive comments from her teachers and contains marks predominately indicating that she was either meeting or exceeding grade level expectations. *See* Exh. 8 at 1-12; Exh. SRO 2 at 59, 193-94; Exh. SRO 3 at 222, 332.

---

[2] Defendant submitted the transcript from the impartial hearing in two separate files, one for each day the hearing was conducted. Page citations to the second day, "Exhibit SRO 3," correspond with the page numbers of the transcript. Thus, defendant here refers to p.225 of the transcript, which is p.21 of the pdf file submitted to the Court.

10. Dalton does not provide any particular special education services to the Student, but makes the school nurse available to her and allows her to relax in the nurse's office and also makes the school psychologist available to her, though the record does not indicate that the Student sees the psychologist with any regularity. The Student's teacher also provides prompting and support when needed, and a learning specialist observes the Student and some of her peers in the classroom three times per week and then offers advice to the teacher. Exh. SRO 2 at 121-24, 157-61, 191-92; Exh. SRO 3 at 240, 359.

11. Giselle Jordan, the DOE psychologist who evaluated the Student and participated at the Committee on Special Education ("CSE") meeting held to discuss possible classifications for the Student, and Maralynn Mash, the special education teacher who observed the Student at Dalton and also participated in the CSE meeting, both testified at the impartial hearing that the "accommodations" the Student receives at Dalton would also be available to the Student in a general education, public school, setting. Exh. SRO 3 at 242, 296-98, 355.

12. At the start of her third year at Dalton, by letter dated October 5, 2005, plaintiff referred the Student to the CSE and requested the Student be evaluated. Exh. 3 at 1.

13. Plaintiff gave the CSE her consent to evaluate the Student by letter dated December 5, 2005. Exh. 4 at 1.

14. A social history report was compiled for the Student on December 5, 2005, and a psycho-educational evaluation was administered on that day. The psycho-educational evaluation included the administration of an abbreviated version of the Stanford Binet Intelligence Scales, selected subtests from the Wechsler Individual Achievement Test, Bender Gestalt-2 and Recall, the Behavioral Assessment System for Children 2, and a clinical interview. Exh. 5 at 1; Exh. 6 at 1; Exh. SRO 3 at 211, 219.

15.     The Stanford Binet Intelligence test indicated the Student's IQ is 127 and the examiner found that her "academic functioning is commensurate with her cognitive abilities."  Exh. 6 at 3, 7;  Exh. SRO 3 at 211-212.

16.     The Behavioral Assessment System for Children test indicated that the Student does not have a mental health disorder, nor any maladjustment, nor does her behavior impact her adjustment to the school environment.  Ms. Jordan, who administered the test, reported that the Student was not experiencing social or emotional difficulties, but merely demonstrated the same concerns that most children her age experience.  This view was corroborated in testing procured by plaintiff.  Exh. 6 at 6-7;  Exh. 10 at 8-9.  Exh. SRO 3 at 217-218, 237.

17.     Plaintiff had retained an attorney prior to giving her consent to have the Student evaluated, and prior to the formulation of the social history report and the psycho-educational evaluation.  *See* Exh. 5 at 4.

18.     Through her attorney, plaintiff requested an impartial hearing by letter dated January 9, 2006, and informed the DOE that she intended to seek tuition reimbursement for the Student's 2005-2006 school year at Dalton.  Exh. 2 at 1.

19.     The CSE met on January 23, 2006, and held an IEP meeting to discuss possible classifications for the Student.  Exh. 11 at 1.

20.     In addition to the social history report and psycho-educational evaluation, the CSE considered a report of psychological and neurological testing that was privately obtained by the plaintiff and provided to the CSE after numerous requests were made to plaintiff, on January 23, 2006.  This privately obtained testing included administration of the Wechsler Intelligence Scale for Children, which indicated an IQ of 115, and an exploration of the

Student's social characteristics and emotional functioning. *See* Exh. 10 at 1, 5, 8-9; Exh. 13 at 4, 5, 7-8; Exh. SRO 3 at 225.

21. The CSE also considered notes from an observation of the Student conducted while the Student was at Dalton, the Student's then most-recent grade report from Dalton, the "accommodations" the Student received at Dalton, a letter from the Student's psychiatrist, grade reports from P.S. 166, third grade standardized test results, a psycho-educational evaluation and intelligence testing results from 1999, and Education Records Bureau Reports. *See* Exh. 7 at 1; Exh. 8 at 1-14; Exh. 9 at 1; Exh. 15 at 1; Exh. 16 at 1-2; Exh. 17 at 1-2; Exh. 18 at 1-2; Exh. 19 at 1-2; Exh. 20 at 1-6; Exh. SRO 3 at 210-233, 355.

22. Both of the Student's parents, including plaintiff, were present at the CSE meeting, which also included a district representative who was also the school psychologist and the person capable of interpreting the evaluations, the Student's general education teacher, a special education teacher, a parent member, a school social worker, and the Student's psychologist. Exh. 11 at 2; Exh. SRO 3 at 233-34.

23. All those who were present at the CSE meeting participated for the entire meeting. Exh. SRO 3 at 234.

24. At the January 23, 2006 meeting, the CSE concluded that the Student should be classified as non-handicapped. Exh. 11 at 1; Exh. SRO 3 at 234, 239-45.

25. The CSE considered three possible disability classifications for the Student – learning disabled, emotionally disturbed, and other health impaired – and concluded that she did not meet the criteria for any of these classifications. Exh. SRO 3 at 235-39.

26. Using the IQ scores and the other results from both the DOE and the private testing, the CSE found that the discrepancy between the Student's ability and her test

scores was not sufficient to meet the criteria of a "learning disability."  Exh. 11 at 4-5;  Exh. 12 at 1;  Exh. SRO 3 at 236.

27. The CSE found no evidence in the record of an emotional disturbance, and concluded that the Student could not be classified as emotionally disturbed because any emotional issues she may have, including those stemming from her bipolar disorder, have not adversely impacted her educational performance.  Exh. 11 at 4-7;  Exh. SRO 3 at 237-38.

28. The CSE also concluded that the Student could not be classified as "other health impaired" because there was no evidence that anything, including any medical condition, was adversely affecting her educational performance.  Exh. 11 at 4-5;  Exh. SRO 3 at 238-39.

29. Having reached that conclusion, in the seven-page IEP formulated at the January 23, 2006 meeting, the CSE recommended the Student be placed in a general education program and receive no special education services.  Exh. 11 at 1.

30. In support of the recommendation, the IEP discussed the Student's Academic Performance and Learning Characteristics, and Social and Emotional Performance in detail.  The IEP also took note of her Health and Physical Development and reported the Student had no physical issues that needed to be taken into account in formulating her educational program.  Exh. 11 at 3-7.

31. Plaintiff submitted an amended impartial hearing request by letter dated January 25, 2007, contending that the CSE erred in not classifying the Student as a child with a disability and not recommending special education services, and once again indicated that plaintiff would seek reimbursement for the Student's 2005-2006 school year at Dalton.  Exh. 1 at 1.

32. An impartial hearing was held before Hearing Officer Jason L. Stern (the "IHO") on May 5, 2006, and June 2, 2006. Exh. SRO 2 at 1; Exh. SRO 3 at 1.

33. At the impartial hearing, plaintiff presented three witnesses and submitted five exhibits. Exh. SRO 2 at 2.

34. At the impartial hearing, DOE presented two witnesses and submitted several exhibits. Exh. SRO 2 at 2-3; Exh. SRO 3 at 2.

35. The IHO issued his Findings of Fact and Decision on September 11, 2006. Exh. SRO 1 at 9.

36. In his Findings of Fact and Decision, the IHO found that the IEP formulated for the Student was procedurally proper. However, the IHO agreed with plaintiff and found that, substantively, the DOE erred in not classifying the Student as a child with a disability. Exh. SRO 1 at 6-8.

37. Specifically, the IHO determined that the Student should be classified as "Other Health Impaired." *Id*. at 7-8.

38. The IHO concluded that testimony from the Student's teacher at Dalton, Amy Terpening, regarding instances when the Student apparently demonstrated signs of bipolar disorder, was sufficient to establish that the Student's bipolar disorder was adversely affecting her educational performance. Exh. SRO 1 at 7; Exh. SRO 2 at 158-59.

39. Based on this testimony, the IHO concluded that it was "more likely than not" that the Student's grades and test scores would be higher if not for her bipolar disorder. Exh. SRO 1 at 7.

40. The IHO reached this conclusion even though he observed that "no empirical evidence established that [the Student's bipolar] disorder had any impact on her educational performance." *Id*. at 7.

41. The IHO determined that the decision not to classify the Student as Other Health Impaired constituted a denial of a free and appropriate public education. *Id*. at 8.

42. Having made this determination, the IHO evaluated the appropriateness of Dalton and concluded, based on the progress the Student had made at Dalton and the attention she received from Dalton staff, that Dalton was an appropriate placement for the Student. *Id*.

43. Finally, the IHO concluded that plaintiff had cooperated with the CSE and therefore equitable considerations supported plaintiff's claim for reimbursement. *Id*. at 9.

44. DOE appealed the IHO decision to the State Review Officer ("SRO") by petition dated October 13, 2006. Exh. SRO 4 at 15.

45. Plaintiff answered the petition and also served a memorandum of law, both dated November 29, 2006. Exh. SRO 5 at 12; Exh. SRO 6 at 18.

46. The SRO issued his decision on January 3, 2007. Exh. SRO 7 at 8.

47. The SRO sustained the DOE's appeal, disagreed with the IHO, and found that DOE was correct, both procedurally and substantively, to not classify the Student as a child with a disability. *Id*. at 7.

48. The SRO found that there was no evidence in the record to support a conclusion that the Student should have been classified as "Other Health Impaired," "Learning Disabled," or "Emotionally Disturbed." *Id*. at 4-7.

49. The SRO noted that there was no evidence before the CSE that established that the Student's educational performance was adversely affected by her bipolar disorder and

-9-

found that the IHO's conclusion to the contrary was speculative and not supported by the record. *Id*. at 4, 6-7.

50.     The SRO stated that the Student's performance at P.S. 166, at Dalton, and on standardized tests, and the results of the testing administered before the impartial hearing, both by the DOE and plaintiff, all support the finding that the Student's educational performance was not adversely affected by her bipolar disorder. *Id*. at 6.

51.     The SRO concluded that, as the Student did not meet the criteria for classification as a child with a disability, she was not entitled to special education services or any of the IDEA's protections, including reimbursement for her tuition at Dalton. *Id*. at 7.

52.     Having so concluded, the SRO did not reach the question of whether Dalton was an appropriate placement for the Student.

53. Plaintiff appealed this decision to this Court by complaint dated April 30, 2007. *See* Plaintiff's Complaint, dated April 30, 2007.

Dated:      October 5, 2007
               New York, New York

                                     MICHAEL A. CARDOZO
                                     Corporation Counsel of the
                                      City of New York
                                     Attorney for Defendant
                                     100 Church Street, Room 2-179
                                     New York, New York 10007
                                     212-788-0889

                            By:         /s
                                    Andrew J. Rauchberg (AR 2179)
                                    Assistant Corporation Counsel

To:     Neal H. Rosenberg, Esq.
          Law Offices of Neal Howard Rosenberg
          Attorney for Plaintiff
          9 Murray Street, Suite 4 West
          New York, New York 11235
          212-732-9450
          (via ECF)