UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

In the Matter of the Application of C.B. on behalf of Z.G.
her minor child,

Plaintiff,     07 CV 3419 (AKH) (THK)

-against-

DEPARTMENT OF EDUCATION OF THE CITY OF
NEW YORK,

Defendant.

----------------------------------------------------------------------- x

## NEW YORK CITY DEPARTMENT OF EDUCATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

In this action, plaintiff, the parent of Z.G. ("the Student"), appeals the administrative decision by the New York State Department of Education Office of State Review, which denied her request for reimbursement for tuition at the Dalton School ("Dalton"), a private, general education school, for the 2005-2006 school year. At the Court's direction, plaintiff and defendant New York City Department of Education ("DOE") submitted simultaneous motions for summary judgment on October 5, 2007. The parties then submitted opposition papers in further support of their motions to the Court on November 2, 2007. DOE submits this reply memorandum of law in further support of its motion for summary judgment.

In plaintiff's memorandum of law in opposition to DOE's motion for summary judgment ("Plaintiff's Opposition Memo"), plaintiff argues that this Court should ignore the decision of the SRO, which denied plaintiff's request for tuition reimbursement, and consider

only the decision of the Impartial Hearing Officer ("IHO"), which granted plaintiff's request. Without any support, she argues that DOE is attempting to engage in "class warfare" and refuses to classify the Student as disabled under the Individuals with Disabilities Education Act ("IDEA") only because the Student was attending Dalton.  Plaintiff also restates her basic position – that the Student should have been classified as "other health impaired," and the failure to do so constitutes a denial of a free and appropriate public education ("FAPE").  Further, plaintiff reasserts that Dalton provides an appropriate, special education placement for the Student, and that equitable considerations support their claim.

As discussed more fully below, these arguments must fail.  The SRO issued a thoughtful decision that was well-supported by the record, and that should be given due weight. DOE did not classify the Student as disabled under the IDEA because she did not meet the qualifications for any applicable classification.  The suggestion that this decision was predetermined simply because the Student was attending a particular school is absurd.  Even if the Student were disabled under the Act, plaintiff cannot demonstrate that Dalton, a general education school, provided an appropriate special education program for the Student.  Finally, because plaintiff never intended to accept a public school placement, equitable considerations do not support an award of tuition reimbursement.

As plaintiff cannot meet her burden, DOE is entitled to judgment as a matter of law, and its motion should be granted.

**ARGUMENT**

**POINT I**

**THIS COURT SHOULD GIVE DUE WEIGHT**
**TO THE DECISION OF THE SRO**

        In Plaintiff's Opposition Memo, plaintiff continues her effort to divert the Court's attention away from the SRO decision and have the Court consider only the IHO decision. Plaintiff argues that this Court should conduct a de novo review of the administrative record and defer to the "initial decision maker," or the IHO. *See* Plaintiff's Opposition Memo at pp.2-6. Plaintiff also repeats, almost verbatim, her argument that New York State regulations prohibit this Court from giving any deference to the SRO decision. *See id.* at 2. These arguments remain transparent attempts to focus the Court on the administrative decision that favors her, as opposed to the decision on appeal that found against her. They have no support in the law of this judicial circuit.

        In *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007), the Second Circuit outlined the standard of review in IDEA cases:

> Although the district court must engage in an independent review of the administrative record and make a determination based on a "preponderance of the evidence," *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (2d Cir. 1997), the Supreme Court has cautioned that such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review," [*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v.*] *Rowley*, 458 U.S. [176,] 206 [(1982)]. To the contrary, federal courts reviewing administrative decisions must give "due weight" to these proceedings, mindful that the judiciary generally "lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 206, 208 (internal quotation marks omitted).

> We applied the *Rowley* deference standard in *Walczak* [*v. Florida Union Free Sch. Dist.*], in which we overturned a district court's reversal of an SRO's decision under the IDEA. We noted that, in order for the district court to conduct an "independent" review of the sufficiency of an IEP under the IDEA that does not "impermissibly meddl[e] in state educational methodology," it must examine the record for "objective evidence" that indicates "whether the child is likely to make progress or regress under the proposed plan." *Walczak*, 142 F.3d [119,] 130 [(2d Cir. 1998)] (quoting *Mrs. B.*, 103 F.3d at 1121). And in *Frank G.* [*v. Bd. Of Educ.*], we recently noted that the district court is required to employ the same objective evidence standard when ascertaining the appropriateness of a parent's private placement, *see* 459 F.3d [356,] 364 [(2d Cir. 2006)], always being mindful, of course, that deference to the administrative proceedings is particularly warranted when the district court's decision is based solely on the administrative record.

*Gagliardo*, 459 F.3d at 112-113. This is the applicable standard of review. The Court is advised by the Second Circuit to conduct an independent review of the administrative record and base its decision on the preponderance of the evidence. *Id*. at 112. The Court must give due weight to the administrative decisions, and deference is "particularly warranted" when, as here, the Court's decision is based on the administrative record. *Id*. at 113.

The Second Circuit has also held that deference should be given to the final administrative decision, which in the present matter is the SRO decision. *Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (2d. Cir. 1984); *see also* DOE's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Further Support of Its Motion for Summary Judgment, dated November 2, 2007 ("DOE's Opposition Memo") at 3-4. While deference is appropriate for matters of educational policy, the Court can consider matters of statutory interpretation de novo. *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 102 (2d Cir.

1998); *see also* DOE's Opposition Memo at 6.  The Second Circuit has held that a district court is as capable as a state administrative official to interpret the IDEA or the definitions of specific disabilities under federal and state law.  *Muller*, 145 F.3d at 102.

        Plaintiff's interpretation of New York State regulations is wholly unsupported. *See* Plaintiff's Opposition Memo at 2.  As DOE argued in its opposition papers, plaintiff's assertion that State regulations prohibit giving any weight to the SRO decision is contrary to the law.  *See* DOE's Opposition Memo at 5-7.  There also is no support for plaintiff's assertion that the IHO decision should be given "great weight," and that the later SRO decision should be disregarded.  Plaintiff's Opposition Memo at 3.  The Second Circuit has stated that the only instance where deference is not owed to the final administrative decision is when there is a disagreement over the credibility of witnesses.  *See Karl*, 736 F.2d at 877.  In this case, however, there was no such disagreement between the SRO and the IHO.  *See* DOE's Opposition Memo at 4.  Plaintiff's only assertion that is consistent with the law is the uncontroversial statement that a state administrative decision should not be followed if it is "unsupported by the record as a whole and incorrect as a matter of law."  *See* Plaintiff's Opposition Memo at 4.  Here, notably, it is the IHO's decision which meets that standard.  The IHO concluded the Student should have been classified as "other health impaired," though he explicitly stated that no empirical evidence supported that conclusion.  *See* Exhibit ("Exh.") 1 at 7.  That speculation is unsupported by the record and is incorrect as a matter of law.  By comparison, the SRO approached his review as the Second Circuit instructed – he focused on objective evidence in the record, carefully weighed the evidence, and concluded that it supported the CSE's decision to not classify the Student as handicapped under the IDEA.  *See* Exh. SRO 7 at 5-7;  *see also* DOE's Memorandum of Law in Support of its Motion for Summary Judgment, dated October 5, 2007 ("DOE's Moving Memo")

at 10-15;  DOE Opposition Memo at 3-6.  Thus, there is no objective reason to disregard the SRO's decision.

Applying the proper standard to the present matter, this Court should conduct an independent review of the administrative record.  In doing so, it should give due weight to the SRO's decision, as it was the final administrative decision and was based on the same record that is now before the Court.  The Court can consider the question of whether the Student was properly classified as "non-handicapped" de novo, as that requires interpretation of federal and state statutory definitions of certain learning disabilities.  However, the Court's review of that decision can still be guided and informed by the SRO's decision which was both thorough and thoughtful.

When reviewing the administrative record, this Court should conclude, as the SRO did, that objective evidence in the record establishes that the Student was properly classified.  Plaintiff has not met her burden and has not demonstrated that the Student is disabled under the IDEA (*see* Point III A below), nor that Dalton is an appropriate placement for her (*see* Point III B below).  The Court should affirm the SRO's decision, and deny plaintiff's request for tuition reimbursement.


## POINT II

### PLAINTIFF'S SUGGESTION THAT DOE IS ATTEMPTING TO CAST THIS DISPUTE AS "CLASS WARFARE" IS NONSENSE

Plaintiff accuses DOE of purposefully denying the Student a free and appropriate public education because of class based bigotry.  *See* Plaintiff's Opposition Memo at 6-7, 17. Plaintiff alleges that the CSE refused to classify the Student as handicapped simply because she was attending Dalton and its bias against the school and its students motivated the CSE to ignore

the Student's alleged disability and predetermine the outcome of its evaluation.  *Id.*  However, it is absurd to suggest that DOE would knowingly deny the Student needed services because of bias.  Further, neither the SRO nor the IHO found there was any evidence of predetermination. *See* DOE's Opposition Memo at 7-8.  These accusations are baseless, have no support in the record, and should be disregarded by this Court.

**POINT III**

**PLAINTIFF HAS NOT MET HER BURDEN OF DEMONSTRATING THAT THE STUDENT SHOULD HAVE BEEN CLASSIFIED AS "OTHER HEALTH IMPAIRED," THAT DALTON WAS AN APPROPRIATE PLACEMENT, AND THAT EQUITABLE CONSIDERATIONS SUPPORT HER CLAIM**

Plaintiff has the burden of establishing that the general education program recommended by the DOE was inappropriate, that Dalton provided an appropriate program, and that the equities support plaintiff's claim.  *Sch. Comm. Of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985);  *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993);  *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).  In order to be reimbursed for the Dalton tuition, she must establish all three elements.  *Id*.  However, plaintiff cannot demonstrate any of these elements, and thus her claim for tuition reimbursement should be denied.

**A.     Plaintiff has not established that the Student should have been classified as "other health impaired," or any other designation under the IDEA.**

In her opposition papers, plaintiff repeats her argument that the Student should have been classified as "other health impaired."  Plaintiff's Opposition Memo at 7-11.  However, as DOE has argued in both of its prior submissions, there is no evidence that the Student's educational performance has been adversely affected by bipolar disorder.  These arguments need

not be repeated here. *See* DOE's Moving Memo at 13-15; DOE's Opposition Memo at 8-10. Thus, the Student does not meet the statutory definition of "other health impaired." Plaintiff has not, and cannot, establish that the Student should have been classified as disabled under the IDEA.

**B.     Plaintiff has not established that Dalton is an appropriate placement for the Student.**

Even if this Court were to find that the Student should have been classified as disabled under the IDEA, plaintiff has not established that Dalton is an appropriate placement for the Student. In her opposition memo, plaintiff contends that is "abundantly clear" that the Student was receiving both special education and related services from Dalton. Plaintiff's Opposition Memo at 11. Plaintiff first refers to the efforts of the Student's teacher and the observations of Dalton's learning specialist, and asserts that these constitute special education in the form of specialized instruction. *Id*. at 13. However, as DOE previously argued, these are not special education services and accommodations of this sort would be available in a general education program. *See* DOE's Moving Memo at 16-17.

Plaintiff then alleges that the Student was receiving school health services, parent counseling and training, and psychological services, all of which are related services. Plaintiff's Opposition Memo at 13. However, the services indicated by plaintiff are not related services as defined in New York. New York defines school health services as "nursing services provided by a qualified school nurse or other health services provided by a qualified person designed to enable a student with a disability to receive a free appropriate public education as described in the individualized education program of the student." 8 NYCRR § 200.1(ss). The nurse at Dalton did not provide any particular service to the Student, but made her office available as a place for the Student to relax. DOE's 56.1 Statement at ¶ 10. This service could have been

provided by anyone with an office – the fact that it happened to be the school nurse does not render this a "school health service" and thus part of a special education program.

Plaintiff also makes the bare conclusory statement that the Student is receiving parent counseling and training. Plaintiff's Opposition Memo at 13. New York defines parent counseling and training as "assisting parents in understanding the special needs of their child; providing parents with information about child development; and helping parents to acquire the necessary skills that will allow them to support the implementation of their child's individualized education program." 8 NYCRR § 200.1(kk). Without further explanation, however, plaintiff cannot be said to have established, as is her burden, that the Student is receiving this related service, that what she is receiving meets the State's definition, or that the service is necessary for her to receive an educational benefit.

The record indicates that the Student was receiving "psychological services" from her psychiatrist and her psychologist, but these services were independently obtained, not provided by Dalton. The record does not indicate that she received any regular counseling from Dalton's psychologist. In order for a private placement to be found appropriate and for plaintiff to be awarded reimbursement, the private placement itself must provide all necessary services. If psychological services were necessary for the Student, as plaintiff alleges, then Dalton cannot be considered an appropriate program as it does not provide the services the Student requires. *See Gagliardo*, 489 F.3d at 114 (finding unilateral placement was not appropriate, and thus parent was not entitled to tuition reimbursement, where school did not provide all necessary services; private therapy could not render the placement appropriate).

Lastly, plaintiff argues that the program at Dalton was necessary for the Student, and its appropriateness was demonstrated by the progress she made there. Plaintiff's Opposition

Memo at 14-16.  However, plaintiff has not established that the accommodations made at Dalton were necessary for the Student, as the Student also made progress at the general education program at P.S. 166 without these accommodations.  Thus the record does not support the conclusion that these services are necessary for her to receive an educational benefit.  Further, progress is only one factor to consider and does not, by itself, demonstrate that Dalton was an appropriate program.  *See Gagliardo*, 489 F.3d at 115;  *see also* DOE's Moving Memo at 15-19.

       For these reasons, plaintiff has not met her burden of establishing the appropriateness of Dalton.  Even if the Court finds the Student was disabled under the IDEA, it should still deny plaintiff tuition reimbursement.

**C.      Plaintiff has not established that the equities support her claim.**

       Finally, plaintiff has not established that equitable considerations weigh in favor of an award of tuition reimbursement.  Plaintiff maintains that she fully cooperated with the CSE process and "categorically" denies that she requested an evaluation for the Student only to receive tuition reimbursement (notably plaintiff never affirmatively states that she would have accepted a public school placement).  Plaintiff's Opposition Memo at 16-17.  However, as DOE argued in its previous memoranda, the evidence in the record shows that plaintiff never intended to accept a public school placement and cooperated with the CSE for the sole purpose of obtaining reimbursement for Dalton's tuition.  *See* DOE's Moving Memo at 19-21;  DOE's Opposition Memo at 11.  Indeed, plaintiff had requested an impartial hearing seeking tuition reimbursement even before the CSE had met and recommended a general education program.  *See* DOE's Moving Memo at 20.  Thus, the equities in this case do not support plaintiff's claim.

       Accordingly, it is clear that plaintiff cannot satisfy any of the three prongs of the *Burlington/Carter* test.  Plaintiff's claim for tuition reimbursement should therefore be denied, and DOE's motion for summary judgment should be granted.

## <u>CONCLUSION</u>

Based on the foregoing and the papers previously submitted, defendant New York City Department of Education respectfully requests that its motion for summary judgment be granted in its entirety, and that the Court grant DOE such other and further relief as the Court deems just and proper.

Dated:      November 21, 2007
            New York, New York

MICHAEL A. CARDOZO
Corporation Counsel of the
 City of New York
Attorney for Defendant
100 Church Street, Room 2-179
New York, New York  10007
212-788-0889

By:               /s
           Andrew J. Rauchberg (AR 2179)
           Assistant Corporation Counsel

To:     Neal H. Rosenberg, Esq.
        Law Offices of Neal Howard Rosenberg
        Attorney for Plaintiff
        9 Murray Street, Suite 4 West
        New York, New York  11235
        212-732-9450
        (via ECF)